UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LIDYA RADIN,

                                  Plaintiff,          04 Civ. 704 (RPP)

      - against -

                                                      **OPINION AND ORDER**

ALBERT EINSTEIN COLLEGE OF MEDICINE
OF YESHIVA UNIVERSITY, YESHIVA
UNIVERSITY, NORMAN LAMM, RICHARD
M. JOEL, DOMINICK P. PURPURA, MICHAEL J.
REICHGOTT, TODD R. OLSON, JAMES DAVID,
JANICE O. BENNETT, COMMITTEE ON STUDENT
PROMOTIONS OF ALBERT EINSTEIN COLLEGE
OF MEDICINE 1994 TO 1998, and JOHN DOES 1 TO 50,

                                  Defendants.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       In a letter to the Court dated October 13, 2005, while her appeal of this Court's dismissal of her Amended Verified Complaint on May 20, 2005 was pending in the Second Circuit, Plaintiff asserted that defense counsel had made false assertions to the Court in papers in support of Defendants' motion to dismiss. By order on October 17, 2005, this Court declined to hear or decide those matters in view of the pending appeal. On August 3, 2006, the Second Circuit dismissed Plaintiff's appeal and issued a mandate that this Court now has jurisdiction of this case. This opinion will treat the matters addressed in Plaintiff's letter of October 13, 2005 as a motion pursuant to Rule 60(b) and Rule 11 of the Federal Rules of Civil Procedure in view of Plaintiff's pro se status. See, e.g., Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (construing papers of pro se litigants liberally).

In her letter of October 13, 2005 Plaintiff strenuously protests alleged false statements of material fact presented by defense counsel in his case, accusing him of "intentionally creating a false court record upon which [this Court] based erroneous rulings." (Letter of October 13, 2005 at 1.) Plaintiff states:

> [Defense counsel] lied. I was never suspended under Einstein's Policy on Student Professional Misconduct (Misconduct policy), see Defendant's Motion to Dismiss page 7, and [Def. Counsel] Aff., Ex. B (he quoted the 1995-96 Compendium, attached for ease of reference). Einstein never provided to me any part of their Policy on Student Professional Misconduct (Misconduct policy).

(Id. at 1-2.)[1] Page seven of the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defendants' Memorandum") reads as follows:

> On May 15, 1996, plaintiff voluntarily checked into the emergency room "to address [her] concerns about the episodes of harassment she experienced," and was later admitted to an affiliate of the hospital. (Complaint at ¶ 104.) On May 22, 1996, [Albert Einstein College of Medicine ("AECOM")] suspended plaintiff. (Id. at ¶ 106.) Plaintiff alleges AECOM's publications provide for suspensions "only upon the occurrence of certain specified events, and only upon notice and adherence to specific procedures." (Id. at ¶ 107; see also id. at ¶¶ 180(b), 303(f).) The 95-96 Compendium provides: "If in the judgment of the Dean of the College, the conduct of a student is such that it may harm a fellow student, a member of the staff, or a patient or may do serious harm to the reputation of the school, then the dean may suspend a student immediately." ([Def. Counsel] Aff., Ex. "B" at 15.)

(Defs' Mem. 7.)[2]

Exhibit "B" to defense counsel's Affirmation in Support of Motion to Dismiss contains language from AECOM's "Compendium of Information on Examinations, Grades and Promotions 1995-1996" ("1995-1996 Compendium") quoted by defense

---

[1] Plaintiff goes on to claim that defense counsel "deliberately omitted page 14" of the 1995-1996 Compendium – "the complete [Misconduct] policy is stated on pages 13, 14, and 15" – in his Affirmation Exhibit "B" "in order to mislead" (Letter of October 13, 2005 at 2); but, the provisions on page 14 do not pertain to the Dean's right to suspend a student immediately – the point defense counsel's memorandum was making at page seven, (Defs' Mem. 7).

[2] The 1995-96 Compendium was referred to in the Amended Verified Complaint. (Am. Compl. ¶ 43)

2

counsel in his memorandum. (Def. Counsel Aff., Ex. "B" at 15; Defs' Mem. 7.) Comparison of the quotation in the memorandum with the exhibit reveals that the Compendium does allow the Dean of the College to suspend a student immediately if in his judgment the student's conduct may do serious harm to the reputation of the school. (See id.) It is true that Defendants' Memorandum erroneously omits the concluding phrase "pending completion of the deliberations set forth in this policy" (Defs' Mem. 7.); however, while the quotation should have concluded with an ellipsis before the period, this omission does not evince intent to mislead. Defense counsel provided and directed the Court toward the full text of the quoted 1995-1996 Compendium provision – including the omitted phrase – cited in Defendants' Memorandum. (Defs' Mem. 7; Def. Counsel Aff., Ex. "B" at 15.) Furnishing the full text of the provision in an exhibit cited as support is inconsistent with an intent to misrepresent. Furthermore defense counsel's incomplete quotation does not constitute a material misstatement. The quotation was only meant to show that the Dean had power to suspend Plaintiff under the 1995-1996 Compendium at the time he did.[3]

As for Plaintiff's claim that she never received a copy of the Misconduct Policy, (Letter of October 13, 2005 at 2), Plaintiff explicitly asserted in the Amended Verified Complaint that she received and relied on the 1995-1996 Compendium when entering into her studies at AECOM:

> Plaintiff entered into her studies at defendant AECOM and paid tuition, as well as other payments to defendant AECOM in reliance upon the representations made about its programs, procedures and policies as set

---

[3] "Professional misconduct" as defined in the 1995-1996 Compendium includes a student's "[f]ailure to meet generally accepted standards of . . . emotional stability . . . ." (Def. Counsel Aff., Ex. "B" at 13). This issue was raised by Plaintiff's May 14, 1996 e-mail to the Dean referred to in the Amended Verified Complaint. (See Am. Compl. ¶ 176.) The e-mail called him a "Nazi beast" and a "son of a bitch," and threatened to "ruin" him. (Def. Counsel Aff., Ex. "D.")

3

forth in its . . . Compendium of Information on Examinations, Grades and Promotions 1994-1995 and 1995-1996 . . . .

(Am. Compl. ¶ 43.)

Plaintiff also argues that she was not suspended under the Misconduct Policy because if she

had been suspended . . . then, as required by that policy, Einstein would have had to advise [her] of the procedures of that policy (see page 13, section 3.2 [of the 1995-1996 Compendium]). Einstein never did. Further, the Misconduct policy requires that an inquiry be conducted within 20 to 50 days (page 14, section 3.3), that never happened.

(Letter of October 13, 2005 at 2.)

As Exhibit "F" from defense counsel's affirmation showed, on June 17, 1996 after her suspension Defendant Reichgott notified Plaintiff of what procedures she must follow to be reinstated to the curriculum by AECOM. (See Def. Counsel's Aff. Ex. "F"; Court's Op. and Order 22, May 20, 2005.) In short, Plaintiff had to (1) make a written request for reinstatement to the curriculum, (2) provide medical confirmation from her treating psychiatrist that her condition remains stable or continues to improve, and (3) consent to an independent evaluation by a psychiatrist selected by AECOM. (See id.) Thus contrary to Plaintiff's assertion in her October 13, 2005 letter, she was advised by AECOM of the procedures under the Misconduct policy. (See id.) As for any inquiry not being conducted, since Plaintiff refused to consent to AECOM's reinstatement requirements, the inquiry was frustrated. (See Am. Compl. ¶¶ 146-47.)

Furthermore the Court did not rely on the statement of defense counsel on page seven of Defendants' Memorandum in dismissing Plaintiff's case. Plaintiff's case was dismissed because the statute of limitations had run on these claims of Plaintiff long before she filed her complaint. (See Court's Op. and Order, May 20, 2005.) Nor can

4

Plaintiff claim that she is presenting newly discovered evidence. Plaintiff and her attorney had sufficient opportunity to bring the so-called lie by defense counsel to the court's attention in their response papers and at oral argument. Accordingly, Plaintiff's request for relief from this Court's May 20, 2005 decision based on her correspondence to this Court is DENIED.

It is possible that Plaintiff also believes that she has made a motion for discovery in this Court. In a letter dated August 3, 2006, Plaintiff "request[s] permission to check any and all Bench Memos and any and all other 'internal court documents' in [her] case." (Letter of August 3, 2006 at 1.) Aside from the fact that this Court has no bench memoranda or internal court documents in this case, such internal court documents are protected by judicial privilege. See Goetz v. Crosson, 41 F.3d 800, 805 (2d Cir. 1994) (affirming the "disallowance of questions relating to the processes of judicial decision"). If this is a request to inspect internal bench memoranda while the circuit court was reviewing this case, those are also protected by judicial privilege. (See id.) Consequentially, Plaintiff's request to review internal court documents is DENIED.

Decisions on all issues raised to this Court having been completed, this case is CLOSED.

IT IS SO ORDERED.

Dated: New York, New York
August 22, 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order sent to:

*Plaintiff*
Lidya Radin
278 Third Street, #1
Jersey City, New Jersey 07302
Tel:     718-496-8775

*Counsel for Defendants*
Sive, Paget & Riesel, P.C.
460 Park Avenue
New York, New York 10022
By:    Daniel Riesel
       Kate Sinding
Tel:    212-421-2150
Fax:    212-421-2035